IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 14–CR-30152-5-NJR |
| | ) |
| AKEELAN L.J. PAULETTE, | ) |
| | ) |
| Defendant. | ) |

# ORDER

**ROSENSTENGEL, District Judge:**

On August 22, 2015, Defendant Akeelan L.J. Paulette filed a Motion for Extension of Time to File Motion to Suppress Evidence (Doc. 322). Without waiting for a ruling from the Court, he contemporaneously filed his Motion to Suppress Evidence (Doc. 323). Paulette seeks to suppress the 376.7 grams of cocaine that was seized from his person during a pat-down search at the St. Louis Amtrak station on July 8, 2014 (Doc. 323). The Government filed responses in opposition to both motions (Docs. 325, 331), to which Akeelan L.J. Paulette replied (Docs. 326, 348).

The Court will first address the motion seeking an extension of time to file the motion to suppress. The original deadline for all Defendants to file pretrial motions was October 16, 2014 (Doc. 107). A number of extensions were sought and received by the various co-Defendants (Docs. 97, 104, 105, 113, 206, 207, 209, 210, 217, 227), and the final deadline for filing pre-trial motions was set as March 25, 2015 (Doc. 230). Prior to the expiration of the pre-trial motion deadline, Akeelan L.J. Paulette's counsel withdrew

(Docs. 216, 232). On March 2, 2015, the Court appointed Latoya Berry as substitute counsel for Akeelan L.J. Paulette (Doc. 234). At the time Ms. Berry was appointed, more than three weeks remained until the expiration of the pre-trial motion deadline. The deadline came and went, however, without any submission from Ms. Berry.

The only Defendant in this matter who submitted pre-trial motions was Ayiko Paulette. One of those motions was very similar to Akeelan L.J. Paulette's current motion to suppress in that it challenged the events that occurred on July 8, 2014, at the St. Louis Amtrak station (Doc. 225). A hearing on Ayiko Paulette's motions was scheduled for May 13, 2015, but it was continued until July 15th at Ayiko's request (Doc. 265; Doc. 273). At the hearing, Duane Clauer, an agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives, provided testimony regarding the investigation, searches and seizures that occurred at the train station. In short, officers suspected that Ayiko Paulette, Akeelan L.J. Paulette, and the other eight individuals with whom they were travelling were transporting cocaine from Texas to St. Louis, so the officers detained the group when their train arrived in St. Louis. All ten individuals were frisked, which revealed that eight of them, including Akeelan L.J. Paulette, were wearing "diapers" of cocaine. The officers recovered a total of approximately three kilograms of cocaine from those eight individuals. Following the hearing, on August 3, 2015, the Court issued a lengthy Order discussing the investigation at the train station and ultimately denying Ayiko Paulette's motions to suppress (Doc. 296).

Importantly, Ms. Berry did not file anything in the months leading up to the suppression hearing or otherwise seek to participate in the hearing. In fact, she did not

even attend the hearing. However, approximately three weeks after the Court issued its Order—and almost five months after the expiration of the pre-trial motion deadline—Ms. Berry filed a motion for an extension of time along with the motion to suppress (Docs. 322, 323).

In support of her motion for extension of time, Ms. Berry indicates that she has had communication problems with Mr. Paulette and also that she required an extended amount of time to review the voluminous discovery in this matter (Doc. 322). The Government filed a response opposing Ms. Berry's request for an extension (Doc. 325). According to the Government, "no good reason has been presented for filing a motion five months late." (Doc. 325, p. 2). The Government argues that Mr. Paulette's refusal to communicate with his attorney is no excuse for missing the deadline because "[d]eadlines exist, in part, for the very purpose of motivating defendants to communicate with their attorneys and to make decisions about the handling of their cases in a timely manner" (Doc. 325, p. 3). The Government further argues that if Ms. Berry needed an extension of time, she should have requested it before the deadline expired (Doc. 325, p. 3).

Ms. Berry filed a reply, in which she stresses that this case is "complex" and involves "voluminous discovery" (Doc. 326, p. 1). She states that she did not get the box of discovery until March 19, 2015, and she argues that she could not have possibly filed a motion to suppress by the deadline four days later (Doc. 326, p. 2). In fact, it took the other defense attorneys six months to file any substantive motions, which "exemplifies the amount of time and work required to produce a motion in this matter" (Doc. 326).

She also argues that "the Government has not cited a single reason as to how it would be prejudiced" if her motion for extension of time was granted (Doc. 326, p. 2).

Contrary to Ms. Berry's assertion, the Government is not obligated to show that it would be prejudiced by her being allowed to file her motion to suppress five months late. *See* FED. R. CRIM. P. 12(c). Instead, she is required to show good cause for failing to meet the deadline set by the Court. FED. R. CRIM. P. 12(c). She has not done so. She mentions only her communication problems with Mr. Paulette and the voluminous amount of discovery in this matter. The Court understands and accepts as true both of those assertions, which is why so many extensions of time were previously granted. What the Court does not understand is why Ms. Berry waited so long to simply request another extension of time. And she made no attempt to explain the delay. She obviously could have requested an extension of time prior to the March 25th deadline, or sometime before the Court held the suppression hearing. But she inexplicably waited until the end of August—well over five months after substituting in as counsel and just two months before trial was scheduled to begin. Consequently, the Court agrees with the Government that Ms. Berry has not established good cause for the late filing. *See United States v. Garcia*, 528 F.3d 481, 485 (7th Cir. 2008) (switching defense attorneys was not "good cause" for delay in filing pretrial motion where new attorney waited four months after substituting in to request a new deadline). Accordingly, Akeelan L.J. Paulette's Motion for Extension of Time to File Motion to Suppress Evidence (Doc. 322) is denied, and his Motion to Suppress Evidence is stricken (Doc. 323).

Before concluding, the Court notes that Akeelan L.J. Paulette's defense is in no way harmed by striking his motion to suppress, because the motion to suppress has no merit. As stated in the previous Order, all of the facts taken together created a reasonable suspicion that Ayiko Paulette and the other individuals with whom he was traveling, including Akeelan L.J. Paulette, were trafficking drugs from Texas to St. Louis (Doc. 296, pp. 17–18). For that reason, the officers were permitted to frisk each of the individuals as part of the investigatory detention. *See, e.g., United States v. Hernandez*, 751 F.3d 538, 542 (7th Cir. 2014) ("[D]rug dealers are known to arm themselves." (quoting *United States v. Are*, 590 F.3d 499, 506 (7th Cir. 2009); *United States v. Koerth*, 312 F.3d 862, 870 (7th Cir. 2002) ("It is 'beyond dispute that drug traffickers are often armed and dangerous.'" (quoting *United States v. Ocampo,* 890 F.2d 1363, 1369 (7th Cir. 1989)).

## CONCLUSION

For the reasons set forth above, Defendant Akeelan L.J. Paulette Motion for Extension of Time to File Motion to Suppress Evidence (Doc. 322) is **DENIED,** and his Motion to Suppress Evidence (Doc. 323) is **STRICKEN**.

**IT IS SO ORDERED.**

**DATED:   September 8, 2015**

s/ Nancy J. Rosenstengel
**NANCY J. ROSENSTENGEL
United States District Judge**